UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MID-ATLANTIC SURGICAL ASSOCIATES, P.C., <br><br> Plaintiff, <br><br> vs. <br><br> UNITEDHEALTHCARE SERVICES, INC., <br><br> Defendant. | Civil Action No.: <br><br> (**Document Electronically Filed**) |

**CLASS ACTION COMPLAINT**

Plaintiff, Mid-Atlantic Surgical Associates, P.C., individually and on behalf of all similarly situated, brings this class action seeking a declaratory judgment, injunctive relief, compensatory damages, counsel fees and costs against Defendant, UnitedHealthcare Services, Inc., and in support thereof, alleges as follows:

**NATURE OF THE ACTION**

1. The United States Congress and New Jersey Legislature have determined that public interest requires insurance carriers to provide their members access to emergency care at all times and, further, to hold patients harmless for such emergency care with the exception of any applicable copayment, coinsurance and deductible. This means that when a member receives emergency care from an out-of-network provider, the insurance carrier must pay the full amount of the billed charges to ensure the member does not receive a bill for the balance of the providers' services ("balance bill"). If the insurance carrier unilaterally determines what it will pay the provider for these services, it exposes the member to payment liability, because an

out-of-network provider of emergency care is permitted to balance bill the member if its charges are not paid to the providers' satisfaction.

2. Defendant UnitedHealthcare Services, Inc. ("Defendant" or "United"), an insurance carrier, has refused to pay Plaintiff Mid-Atlantic Surgical Associates, P.C. ("Plaintiff" or "Mid-Atlantic"), an out-of-network provider, the full amount of its billed charges for emergency services provided to United members.

3. Rather than meet its obligations to remit payment to Mid-Atlantic in an amount sufficient to protect the patient from a balance bill, United has adopted a multi part scheme to avoid its payment obligation which adversely affects all other similarly situated medical providers.

4. As a result, Mid-Atlantic has filed this putative class action seeking a declaratory judgment, injunctive relief, compensatory damages, counsel fees and costs, individually and on behalf of all out-of-network medical providers in the State of New Jersey that provide emergency medical services to United members but have been systematically underpaid by United in violation of federal and state law.

5. Mid-Atlantic, individually and on behalf of the class, seeks a judicial determination under the Declaratory Judgment Act, 28 U.S.C. § 2201, that:

(a) With respect to emergency medical services, United must pay an out-of-network provider an amount large enough to ensure no balance bill is sent to the United member, even if it means United must pay Mid-Atlantic's billed charges less its member's copayment, coinsurance or deductible, see N.J.A.C. 11:24-5.3(b) and N.J.A.C. 11:24-9.1(d)(9); and

(b) With respect to emergency medical services, an out-of-network provider is permitted to balance bill a United member the difference between the payment made by United

2

and the United member's copayment, coinsurance or deductible, see 29 C.F.R. 2590.715-2719A(b)(3)(i) and 75 F.R. 37194.

6. Mid-Atlantic, individually and on behalf of the class, seeks compensatory damages, counsel fees and costs arising out of:

(a) United failing to pay out-of-network providers amounts that are sufficient to hold members harmless in connection with emergency medical services; and

(b) United directing members not to pay balance bills they receive from out-of-network providers from which they received emergency medical services.

## THE PARTIES

7. Mid-Atlantic is a professional corporation engaged in the practice of medicine, with its principal office located at 100 Madison Avenue, Morristown, New Jersey 07960.

8. Mid-Atlantic's surgeons provide medical services to patients at Morristown Medical Center, which includes performing cardiac surgeries for patients admitted to the emergency department, and for patients transferred emergently from other hospitals.

9. In serving patients, Mid-Atlantic has developed a reputation in the community for providing high quality and compassionate care.

10. United is a corporation organized under the laws of the State of Minnesota.

11. Upon information and belief, United maintains its principal place of business in the State of Minnesota.  However, United is duly authorized to transact business in the State of New Jersey.

12. United provides healthcare benefits and insurance to its members.  This includes "out-of-network" benefits for services rendered by "non-participating providers" who have not entered into contracts with United.

3

13. Mid-Atlantic and its physicians have not entered into a network contract with United and when performing services for patients insured by United, the Plaintiff is considered an out of network provider.

## JURISDICTION

14. Pursuant to 28 U.S.C. § 1332, the United States District Court for the District of New Jersey ("District of New Jersey") has subject matter jurisdiction over this action based upon diversity of citizenship, because:

(a) Plaintiff is a citizen of the State of New Jersey;

(b) United is a citizen of the State of Minnesota; and

(c) the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

15. The District of New Jersey has personal jurisdiction over United because it regularly conducts business in the State of New Jersey.

## VENUE

16. Pursuant to 28 U.S.C. § 1391, venue is proper in the District of New Jersey because a substantial part of the events giving rise to this action occurred in this judicial district.

## BACKGROUND FACTS

**I.     Introduction**

17. Mid-Atlantic's surgeons are non-participating providers that do not have a contract with United.

18. As a non-participating provider, Mid-Atlantic determines what charges will be made for providing services based upon a variety of factors including the reasonable and

4

customary charges for the services provided in the general area, the complexity of the medical procedure and the amount of time dedicated to the patient.

19.     Mid-Atlantic's out of network surgeons have performed emergency cardiac procedures at Morristown Medical Center for many patients covered by United.

20.     United has an express obligation, under state and federal regulations, to ensure its members are held harmless for emergency medical services by paying Mid-Atlantic's billed charges less any copayment, coinsurance or deductible.

## II.     United's Systematic Underpayment Of Mid-Atlantic's Charges For Emergency Medical Services

21.     For more than two years, United has systematically underpaid Mid-Atlantic for emergency medical services, which has exposed United members to liability in violation of the federal and state law.

22.     By way of example, on May 12, 2014, Mid-Atlantic's surgeons performed an emergency sternotomy and repair of discrete pseudo-aneurysm for patient K.J.[1]

23.     In letters dated October 15, 2014 and February 25, 2015, United unilaterally claimed to reimburse Mid-Atlantic "an amount that reflects what is typically charged and accepted for the services provided … based on FAIR Health usual and customary charge data."

24.     United wrongly asserts in these letters that by providing services to members, Mid-Atlantic "agreed to accept this amount as payment in full other than any applicable copay, coinsursance, or deductible amount."

25.     The statements contained in United's letters of October 15, 2014 and February 25, 2015 are unequivocally false, because there is no "agreement" between Mid-Atlantic and United.

---

[1]     Patient names have been abbreviated and/or redacted for confidentiality purposes.

26. Mid-Atlantic never agreed to accept out of network reimbursement based upon the "FAIR Health" rate.

27. By refusing to pay Mid-Atlantic's charges or even to negotiate an acceptable level of reimbursement, United has allowed patient K.J. to be exposed to financial responsibility for these emergency medical services.

28. On August 22, 2014, Mid-Atlantic's surgeons performed an emergency cardiopulmonary bypass, atrial reconstruction and repair of an atrial defect for patient B.O.

29. In two separate letters dated February 11, 2015, United cited to "FAIR Health" to support its substantial underpayment of Mid-Atlantic's changes and refusal to negotiate a resolution of the charges to protect the patient from a balance bill.

30. On September 16, 2015, a United representative called Mid-Atlantic with respect to payment for the emergency medical services rendered to patient B.O.

31. When Mid-Atlantic advised United this was an emergency case, and United was required to hold its member harmless by paying Mid-Atlantic its billed charges, United refused to negotiate a resolution of the charges at a level to protect the patient from a balance bill.

32. By refusing to pay Mid-Atlantic's charges or reach a compromise of the charges sought by Mid-Atlantic, United has allowed patient B.O to be exposed to financial responsibility for these emergency medical services.

33. United regularly sends "Remittance Advice" and related correspondence to Mid-Atlantic for other patients in which it relies upon "FAIR Health" rates to deny Mid-Atlantic full payment of its charges.

34. In some cases, United has sent "Remittance Advice" and related correspondence in which it cites "usual and customary" rates to deny Mid-Atlantic full payment of its charges.

### III. United Directs Its Members To Ignore Mid-Atlantic's Balance Bills

35. As part of its scheme to underpay out-of-network medical providers and the patients they treat, United asserts that Mid-Atlantic cannot balance bill its members, *i.e.* the difference between what United decides to pay Mid-Atlantic, and its member's copayment, coinsurance or deductible.

36. To that end, United wrongfully informs patients –verbally and in writing – that they are not responsible for, and should ignore, Mid-Atlantic's balance bills.

37. In letters to Mid-Atlantic's patients, United wrongfully brands the fees charged by Mid-Atlantic as "excessive" – statements which are nothing more than United's opinion that the fees charged by Mid-Atlantic exceed what United wishes to pay.

38. Upon information and belief, United has gone so far as to offer to pay for an attorney to defend the patient from any collection action filed by the provider seeking to obtain payment of a valid balance bill.

39. United's deceptive underpayment scheme directly contradicts federal and state law with respect to payment of out-of-network providers for emergency medical services and balance billing patients.

### IV. United Has Refused To Comply With Clearly Established State And Federal Regulations

40. United's underpayment scheme violates federal and state regulations governing an insurance carrier's obligation to provide coverage to its members for emergency medical services rendered by out-of-network physicians.

41. United's conduct towards Mid-Atlantic is part of broader campaign to coerce out-of-network physicians who provide emergency medical services to:

    (a)    accept payment in amounts far below what they are properly owed; or

7

(b)     enter into a network contract.

42.     Mid-Atlantic has sent multiple letters to notify United of its violations of federal and state regulations.

43.     Despite being put on notice, United refuses to comply with its obligations to out of network providers and patients and systematically underpays providers, brands their fees excessive, and interferes with the right of the provider to balance bill the patient.

## CLASS ACTION ALLEGATIONS

44.     While the precise number of class members is presently unknown to Mid-Atlantic, the number is likely to include all out-of-network physicians who have provided emergency medical services to United members over the last six (6) years preceding the filing of this class action complaint.

45.     Upon information and belief, the amount of class members numbers in the hundreds. Therefore, the number of class members is so numerous that joinder of all class members is impracticable.

46.     The class members will be readily identifiable from business records in the possession of United. They will be advised of this case using the methods of notice customarily used in class actions.

47.     Mid-Atlantic's claims are typical of the class members. All out-of-network physicians that provide emergency services are similarly affected by United's systematic underpayment of claims. In addition, they are similarly affected by United unlawfully notifying members that providers are charging excessive fees and that they are not responsible for, and should ignore, balance bills for emergency services.

48.     As a result of United's systematic underpayment of out-of-network physicians who provide emergency services – in violation of federal and state law – the class action

8

mechanism is superior to all other available means and methods for the fair and efficient adjudication of this controversy since:

    (a)    the expense and burden of individual litigations makes it difficult, if not impossible, for individual class members to obtain relief for United's unlawful conduct;

    (b)    the joinder, in a single action, of all individual class members is impracticable;

    (c)    the damages suffered by each individual class member may be in amounts that make it impractical for each class member to individually pursue a claim; and

    (d)    the requested declaratory and injunctive relief will impact a significant number of class members, if not all of them.

49. Because Defendants have engaged in conduct that is generally applicable to most, if not all, class members, final declaratory and injunctive relief is appropriate with respect to the class as a whole.

50. Common questions of law and fact exist as to all class members, and predominate over any questions that solely affect individual class members. These common questions of law and fact include:

    (a)    Whether United has engaged in the systematic and widespread practice of intentionally underpaying out-of-network physicians who provide emergency services to United's insured?

    (b)    Whether United's systematic and widespread practice of intentionally underpaying out-of-network physicians who provide emergency services has exposed members to liability beyond the member's copayment, coinsurance or deductible?

(c) Whether out-of-network physicians who provide emergency medical services are permitted to balance bill United members when United fails to pay in full?

(d) Whether United has tortiously interfered with patient relationships by advising members that they are not responsible for, and should ignore, balance bills sent by out-of-network physicians for emergency medical services?

(e) Whether United's conduct, as outlined above, violates the regulations promulgated under the Patient Protection and Affordable Care Act, 42 U.S.C. § 18001 (2010), including, but not limited to, 29 C.F.R. 2590.715-2719A(b)?

(f) Whether United's conduct, as outlined above, violates applicable New Jersey regulations, including, but not limited to, N.J.A.C. 11:24-5.3(b) and N.J.A.C. 11:24-9.1(d)(9)?

(g) Whether United's conduct, as outlined above, has caused monetary damages to out-of-network physicians who provide emergency medical services?

51. Mid-Atlantic will fairly and adequately protect the interests of the class members. Mid-Atlantic has no interest antagonistic to the other class members and has retained counsel experienced in health care regulatory matters and class action litigations.

## COUNT I

### Declaratory Judgment

**(Violation Of Federal Regulations Related To Balance Billing For Emergency Medical Services By Non-Participating Providers)**

52. Mid-Atlantic repeats the allegations in paragraphs 1-52 and incorporates them by reference as if fully set forth herein at length.

53. Pursuant to 28 U.S.C. § 2201, "in a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may

10

declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

54. Further, any such declaration "shall have the force and effect of a final judgment or decree and shall be reviewable as such."

55. A controversy has arisen as to whether Mid-Atlantic, as an out-of-network provider, is permitted to balance bill for emergency medical services rendered to United members.

56. The regulations promulgated under the Patient Protection and Affordable Care Act, 42 U.S.C. § 18001 (2010), specifically provide that out-of-network physicians that provide emergency services are permitted to "balance bill" patients when the insurance carrier does not adequately pay.

57. Addressing this precise issue, the June 28, 2010 Federal Register provides:

> ***Out-of-network providers may, however, also balance bill patients for the difference between the provider's charges and the amount collected from the plan or issuer and the patient in the form of a copayment or coinsurance amount*** … Because the statute does not require plans or issuers to cover balance billing amounts, and does not prohibit balance billing, even where the protections of the statute apply, ***patients may be subject to balance billing***.  ***It would defeat the purpose of the protections in the statute if a plan or issuer paid an unreasonably low amount to the provider***[.]

75 F.R. 37194 (June 28, 2010) (emphasis supplied).

58. The codified federal regulation similarly states, with respect to emergency services, that "a participant or beneficiary may be required to pay, in addition to the in-network cost sharing, the excess of the amount the out-of-network provider charges over the amount the plan or issuer is required to pay."  29 C.F.R. 2590.715-2719A(b)(3)(i).

11

59. Contrary to federal law, United has taken the position, both orally and in writing, that Mid-Atlantic is not permitted to balance bill for emergency medical services rendered to United members.

60. To make matters worse, United has specifically advised members that they are not responsible for, and should ignore, Mid-Atlantic's balance bills.

61. United has violated federal law to the detriment of Mid-Atlantic and the class members.

## COUNT II

### Declaratory Judgment

**(Violation Of State Regulations Related To Payment Of Claims For Emergency Medical Services Rendered By Non-Participating Providers)**

62. Mid-Atlantic repeats the allegations in paragraphs 1-62 and incorporates them by reference as if fully set forth herein at length.

63. Pursuant to 28 U.S.C. § 2201, "in a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

64. Further, any such declaration "shall have the force and effect of a final judgment or decree and shall be reviewable as such."

65. A controversy has arisen as to whether United is required to reimburse the provider of medical treatment sufficient so as to hold its members harmless from any liability for emergency medical services in excess of any applicable copayment, coinsurance and/or deductible.

66. A controversy has arisen as to whether, for emergency medical services, United is required to pay out-of-network providers sufficient payment that will ensure its members are held harmless, even if it means paying the out-of-network provider's billed charges in full.

67. With respect to emergency medical services, New Jersey regulations require the following:

(a) That an insurance carrier provide emergency services to its members, and limit a member's liability for such emergency services by out-of-network providers to the network copayment, deductible or coinsurance, see N.J.A.C. 11:24-5.3(b); and

(b) That an insured be free from balance billing for medically necessary services that were covered by an insurance carrier except for copayments, coinsurance or deductibles, see N.J.A.C. 11:24-9.1(d)(9).

68. Contrary to state law, United has asserted that Mid-Atlantic must accept whatever payment United deems sufficient under "FAIR Health" and/or the Prevailing Health Charge System's usual, customary and reasonable rates.

69. Contrary to state law, United has taken the position, both orally and in writing, that it is not required to pay Mid-Atlantic's billed charges less any copayment, coinsurance or deductible paid by its members.

70. United has violated state law to the detriment of Mid-Atlantic and the class members.

### COUNT III

### (Quantum Meruit)

71. Mid-Atlantic repeats the allegations in paragraphs 1-71 and incorporates them by reference as if fully set forth herein at length.

72. Mid-Atlantic and the class members, as out-of-network physicians, provide emergency medical services to United members.

73. United, however, has failed to remit full payment to Mid-Atlantic and class members for these emergency medical services.

74. In fact, United has systematically underpaid Mid-Atlantic and the class members in violation of federal and state law.

75. As a result, Mid-Atlantic and the class members are entitled to recover the full value of the emergency medical services rendered to United members.

## COUNT IV

### (Tortious Interference With Prospective Economic Advantage)

76. Mid-Atlantic repeats the allegations in paragraphs 1-76 and incorporates them by reference as if fully set forth herein at length.

77. Mid-Atlantic and the class members, as out-of-network physicians, provide emergency medical services to United members.

78. United, however, has failed to remit full payment to Mid-Atlantic and class members for these emergency medical services.

79. In addition, United has directed its members not to pay any balance bills issued by Mid-Atlantic and the class members for emergency medical services rendered, in violation of federal law.

80. Upon information and belief, United has gone so far as to offer to pay for an attorney to defend the patient from any collection action filed by the provider seeking to obtain payment of a valid balance bill.

81. United has engaged in this conduct intentionally, maliciously and for the purpose of causing harm to Mid-Atlantic and the class members.

82. For these reasons, United has tortiously interfered with the patient relationships of Mid-Atlantic and the class members.

83. As a result, Mid-Atlantic and the class members have suffered damages, in an amount to be determined at trial.

## COUNT V

**(Violations Of The New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*)**

84. Mid-Atlantic repeats the allegations in paragraphs 1-83 and incorporates them by reference as if fully set forth herein at length.

85. The New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*, states in relevant part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

N.J.S.A. 56:8-2.

86. United's underpayment scheme, as outlined above, constitutes an unlawful practice under the New Jersey Consumer Fraud Act.

87. Specifically, United has engaged in the systematic and widespread practice of:

(a) intentionally failing to pay out-of-network physicians who provide emergency services as required by applicable federal and state law;

(b) misrepresenting to patients that they are not responsible for balance bills sent by out-of-network physicians who provide emergency services; and

(c) misrepresenting to patients that out-of-network physicians who provide emergency services charge excessive fees.

88. United has engaged in these unconscionable commercial practices as part of a scheme to coerce out-of-network physicians who provide emergency service to sign network contracts.

89. Mid-Atlantic and the class members have suffered an ascertainable loss as result of these unconscionable commercial practices, which total the amount of unpaid or underpaid claims submitted for emergency services performed for United's members.

90. As a result, Mid-Atlantic and the class members have suffered damages, in an amount to be determined at trial.

**WHEREFORE**, Mid-Atlantic respectfully requests that the Court enter judgment in its favor and against United, and issue an order:

(a) declaring, with respect to emergency medical services, that United is required to pay out-of-network physicians who provide emergency services an amount large enough to ensure no balance bill is sent to the United member, even if it means United must pay the billed charges in full less the member's copayment, coinsurance or deductible;

(b) declaring, with respect to emergency medical services, that out-of-network physicians who provide emergency services are permitted to balance bill a United member the difference between the payment made by United and the United member's copayment, coinsurance or deductible;

(c) compelling United to pay out-of-network physicians for emergency medical services in accordance with federal and state law, including, but not limited to, 29 C.F.R. 2590.715-2719A(b), N.J.A.C. 11:24-5.3(b) and N.J.A.C. 11:24-9.1(d)(9);

16

   (d) restraining and enjoining United from directing its members not to pay balance bills sent by out-of-network physicians who provide emergency services;

   (e) awarding compensatory damages;

   (f) awarding treble damages pursuant to N.J.S.A. 56:8-19;

   (g) awarding reasonable counsel fees and costs of suit pursuant to N.J.S.A. 56:8-19; and

   (h) awarding such other relief as the Court deems just and proper.

## DESIGNATION OF TRIAL COUNSEL

Mid-Atlanti designates Charles X. Gormally, Esq. as trial counsel in the above-captioned matter.

**BRACH EICHLER LLC**

By: /s/ Charles X. Gormally
Charles X. Gormally, Esq. (CG2979)
Thomas Kamvosoulis, Esq. (TK0348)
101 Eisenhower Parkway
Roseland, NJ 07068
(973) 228-5700
cgormally@bracheichler.com
*Attorneys for Plaintiff*
*Mid-Atlantic Surgical Associates, P.C.*

Dated: August 18, 2017

17

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2**

Pursuant to Local Civil Rule 11.2, the undersigned hereby certifies that a related action is pending in the Superior Court of New Jersey, Mercer County, Chancery Division, Docket No: MER-C-69-15, entitled *UnitedHealthcare Service, Inc. v. Mid-Atlantic Surgical Associates P.C., et al.* In addition, an administrative complaint was filed against UnitedHealthcare Services, Inc. with the New Jersey Department of Banking and Insurance on or about October 16, 2015. However, no administrative proceedings are currently pending in that forum. I am aware of any other action pending in any court, or of any pending arbitration or administrative proceeding, that is related to the matter in controversy.

        **BRACH EICHLER LLC**

        By: /s/ Charles X. Gormally
        Charles X. Gormally, Esq. (CG2979)
        Thomas Kamvosoulis, Esq.
        101 Eisenhower Parkway
        Roseland, NJ 07068
        (973) 228-5700
        cgormally@bracheichler.com
        *Attorneys for Plaintiff*
        *Jersey Shore Radiology Associates, P.A.*

Dated: August 18, 2017